(No. 4802

UNITED STATES FIDELITY AND GUARANTY COMPANY, A CORPORATION, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 12, 1960.*

DIXON, DEVINE AND RAY, Attorneys for Claimant.

LATHAM CASTLE, Attorney General; SAMUEL J. DOY, Assistant Attorney General, for Respondent.

WHAM, J.

Claimant, United States Fidelity and Guaranty Company, A Corporation, is the subrogee of its insured, John Kavanaugh, Dixon Illinois, by virtue of its net payment in the amount of $559.50 under a collision insurance policy covering a 1952 Buick four-door sedan, which was damaged beyond repair on September 17, 1957, while

being driven by one Wesley Washington, an escaped inmate from the Dixon State School, who had stolen the automobile parked in the driveway of the Kavanaugh home.

The claim is predicated upon Chap. 23, Sec. 4041 (formerly Sec. 372a), Ill. Rev. Stats., as interpreted by the Court in *Dixon Fruit Company, A Corporation, Et Al* vs. *State of Illinois,* 22 C.C.R. 271.

The amount of the claim is undisputed, and the parties agree that claimant is the sole owner of the claim by virtue of the subrogation receipt, which assigned the interest of John Kavanaugh to claimant.

It is undisputed that the damage was caused by one Wesley Washington, an escaped inmate from the Dixon State School.

Respondent contends, however, that the State was not negligent in exercising its custody over the inmate, and, therefore, not liable for damages. With respect to this contention, the facts surrounding the prior record of, custody of, and escape of Wesley Washington are as follows:

On September 17, 1957, one Wesley Washington and two other inmates escaped from the Dixon State School, a charitable institution located at Dixon, Illinois, over which the State of Illinois had and still has control. Some time between the hours of 11:00 P.M. on September 17, 1957 and 2:30 A.M. on September 18, 1957, the escapees stole the Kavanaugh vehicle, and, while driving on River Street in the City of Dixon, Washington lost control of the vehicle, and ran into a row of parking meters.

The Dixon State School is a State institution operated by the Department of Public Welfare for the care and rehabilitation of mentally retarded individuals. It is not a penal institution. The patients are not restrained,

but are free to come and go on the grounds unless their behavior is such as to be a constant threat to their physical or mental well-being. Aggressive or assaultive patients are kept in cottage A-3, and subjected to security measures.

Wesley Washington was admitted to the Dixon State School on March 10, 1955, from Kane County, as mentally deficient. Prior to his admittance, he was reported to have failed to adjust in school, to have been a constant truant, and to have been mischievous. He had been originally placed in the school at St. Charles, where it was determined that he had an apparent disregard for authority. He was then transferred to the Dixon State School.

The record of Wesley Washington, while at Dixon from the date of his admittance up to and including the theft in question, discloses the following acts attributed to him:

March 10, 1955—Admitted to Dixon State School as mentally deficient.

March 20, 1955—Assaulted an employee.

April 9, 1955—Escape and apprehension, burglary of several cars and stealing clothes.

June 10, 1955—Broke windows in school building.

Sept. 18, 1955—Impudent behavior toward employee.

Nov. 21, 1955—Unauthorized absence, returned December 2, 1955.

Feb. 14, 1956—Unauthorized absence, dissatisfied with job.

April 9, 1956—Refused to work, incited other boys to join with him.

June    14, 1956—Unruly, aggressive and attacked employee.

Sept.    1, 1956—Threatened resident with a knife for refusing to commit sodomy.

Jan.    7, 1957—Unauthorized absence.

Sept.    17, 1957—Unauthorized a b s e n c e , involved with Joseph Johnson in car stealing incident in Dixon, Illinois. Returned to custody September 24, 1957.

On September 17, 1957, Washington, who was then sixteen years of age, was not assigned to a security cottage, but was at liberty on the school grounds. At that time there were no proceedings in progress for his transfer, although he was later transferred to Lincoln State School on October 31, 1958.

All of these facts were established by claimant, who called Dr. A. T. Waskowicz, Assistant Superintendent, Medical, of the Dixon State School, as an adverse witness under Sec. 60 of the Illinois Civil Practice Act. He testified to the facts from the records in his possession, which he described as not complete.

Respondent offered no testimony as to the circumstances surrounding the escape, and contends that, although the record of this inmate was bad, continuous close restraint would defeat the rehabilitation program of the hospital.

While it is true that a certain amount of discretion should rest with the officials in charge of such an institution in pursuing a rehabilitation program, it is no defense to rely solely on the contention of rehabilitation, without establishing what respondent did in exercising a reasonable restraint of such a person.

The evidence offered by claimant is sufficient to establish a prima facie case of negligence on the part of respondent. It is apparent that this inmate should have been kept under greater surveillance than the ordinary inmate. The facts establish that he was not so kept.

Respondent offered no testimony on the point. The facts pertaining to the surveillance and escape of the inmate were in the exclusive control of respondent, and would have been presented had they been favorable to respondent.

We, therefore, conclude that claimant has borne the burden of proving that respondent was negligent in allowing the inmate to escape.

Respondent next contends that claimant's insured, John Kavanaugh, was contributorily negligent in that he violated so much of the following statute, being Chap. 95½, Sec. 189, Ill. Rev. Stats.:

"No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition and removing the key."

With respect to this contention, the facts are as follows: John Kavanaugh had parked his automobile in front of his house at about 6:00 P.M., and had left his keys in the ignition. His wife then drove it on an errand about half an hour after dinner, and on returning parked it in the driveway in front of their home. She had taken the keys of her husband out of the ignition, laid them on the seat, used her own key in driving the car, and unintentionally left her husband's keys on the seat, when she returned the automobile to its parking place. She removed her own keys from the ignition and locked it.

Mr. Kavanaugh had intended to use the automobile to go to a meeting, but instead rode with a friend. Neither he nor his wife used or entered the automobile thereafter

ur.til it was stolen some time after 11:00 P.M., when Mr. Kavanaugh last saw it. It was recovered at about 2:30 A. M. the next morning, after it had been stolen and wrecked.

We recognize that the Supreme Court of Illinois in the case of *Ney* vs. *Yellow Cab Company*, 2 Ill. (2d) 724, held that a violation of the statute was prima facie evidence of negligence on the part of the operator of an automobile, and that either a judge or jury, under the facts in the case, could find that such violation was negligence, which proximately caused the injury to the plaintiff.

We do not feel that this case controls the question of contributory negligence in the instant case for two reasons: First, a close reading of the statute reflects that John Kavanaugh did not violate the statute, even though he left the keys first in the ignition and next in the seat. The statute is a part of the Act entitled "Uniform Act Regulating Traffic on Highways" (Chap. 95½, Sec. 238, Ill. Rev. Stats.).

In the same Act is Sec. 117, Chap. 95½, Ill. Rev. Stats., providing as follows:

"The provisions of this Act relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways, except:

1. Where a different place is specifically referred to in a given section.

2. The provisions of Articles IV and V shall apply upon highways and elsewhere throughout the State." (Articles IV and V pertain only to Secs. 133-145 of Chap. 95½, which are not involved herein.)

It is noted from the testimony of the only witness testifying in the case on the particular point that the automobile was parked in the driveway of a private residence at the time it was stolen and not upon a public highway.

Sec. 189 does not specifically refer to any particular place, and, therefore, by the terms of the Uniform Act

Regulating Traffic on Highways, does not apply to a vehicle left unattended at any place other than on the public highway.

This is the only reasonable construction of the statute. If it applied to all places, then leaving the key in an automobile while parked in a locked garage would be as much a violation of the statute, as would parking it in a car port or private driveway at a residence. This could not have been the Legislature's intention.

We know of no rule at common law requiring the owner of an automobile to keep it locked under the circumstances involved herein, and do not intend to announce such rule ourselves.

Secondly, the Ney case is not controlling, even though we assume that the automobile was left unattended and unlocked on the public highway in front of the Kavanaugh home in violation of the statute.

The factual situations of the two cases differ. In the Ney case a taxi driver left a taxicab unattended with its motor running on the downtown streets of Chicago, where it was stolen by a thief, who in flight ran into the plaintiff's vehicle. In the instant case, the vehicle was parked in a residential area in the City of Dixon, Illinois, with its ignition locked. In the night time it was stolen by an escaped inmate, who drove it into a parking meter post on a public parking lot some distance from where it was stolen.

Granting that a jury, or judge without a jury, might find the proximate cause of damage to the plaintiff in the Ney case to be a violation of the statute, we, as judges of the facts as well as judges of the law, do not feel compelled to follow a permissible jury verdict or court finding of fact in the Ney case as a finding precedent in this case.

195

We conclude that the action of the inmate in entering the automobile in the night time, finding the ignition locked, finding the keys on the seat, stealing the car from the front of the residence, and driving it into a post in another part of town, was not reasonably to be foreseen by John Kavanaugh in the exercise of ordinary care for the protection of his property, and constituted the proximate cause of the damage to the Kavanaugh automobile. Consequently, even assuming a violation of the statute, we do not believe that it constitutes contributory negligence, which proximately contributed to the damage in question, so as to bar recovery by this claimant.

We believe from the evidence in this case that claimant's insured, John Kavanaugh, was in the exercise of ordinary care for the safety of his automobile, that respondent was negligent in exercising custody over the escaped inmate, and, as a proximate result thereof, the vehicle was stolen and damaged.

The claim is, therefore, allowed in the sum of $559.50.